[No. 1115-2.     Division Two.     June 6, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY DONZELL YOUNG, *Appellant*.

*James S. Witt III* and *Allotta, Witt & Witt*, for appellant.

*Ronald L. Hendry, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

PEARSON, C.J.—The defendant appeals from a conviction of rape. There is no challenge made to the sufficiency of the evidence, which shows that defendant picked up the victim, who was hitchhiking, took her to an apartment, and raped her. The defendant's principal assignments of error relate to the trial court's denial of a continuance on the morning of trial to enable the defendant to retain counsel, and to the denial of a new trial on the asserted ground that an alibi witness changed his story as a result of police intimidation,

and was consequently not called at trial. We affirm the conviction.

Defendant's first assignment is entirely without merit. The granting or denial of a motion for a continuance rests within the sound discretion of the trial court. *State v. Sutherland*, 3 Wn. App. 20, 472 P.2d 584 (1970); *State v. Johnson*, 74 Wn.2d 567, 445 P.2d 726 (1968); *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968). Defendant made his motion on the morning of trial, having contacted retained counsel on the preceding day, and having informed him that an *arraignment*, not trial, was to take place the following day. Appointed counsel was fully prepared to try the case; witnesses and veniremen were ready. Furthermore, the case was well tried by appointed counsel. It cannot be said that the trial court abused its discretion. *State v. Sutherland, supra.*

Defendant's counsel produced two affidavits in support of the motion for a new trial. One was that of a listed alibi witness who related that he had been contacted by a police officer, who in the course of his investigation expressed his opinion of the defendant's culpability in this and other rapes, and further his opinion that no one should testify in the defendant's behalf. The witness stated further simply the testimony as to the whereabouts of the defendant at a certain time—testimony he would have given had he been called at trial—and indicated that this time varied somewhat from that which he had originally related to defense counsel.

The other affidavit was that of defense counsel, wherein he stated that the alibi witness told him he had changed his version of the time involved "after further reflection upon the incident." Since the variance in times was crucial to the alibi, the witness was not called.

These affidavits fail to make any showing of witness intimidation, even if taken as true on their face. Indeed, the affidavit of the proposed alibi witness, in light of the purpose for which it was brought forward by the defendant, is

remarkable in the meticulousness with which it avoids implying that the actions of the police officer influenced his recollection.

■ The affidavits, if taken as true in all respects, establish that an investigative officer acted improperly in attempting to prejudice the defendant in the eyes of the witness. They further establish that the witness modified his previous story after further reflection. In our opinion, the trial court did not err in refusing to infer a connection that the witness did not assert.

In reaching this conclusion, we observe that our recent case of *State v. Kearney,* 11 Wn. App. 394, 523 P.2d 443 (1974), is distinguishable on its facts. In *Kearney,* we reversed a conviction for child molesting and ordered a dismissal, upon the ground of incurable prejudice occasioned by the misconduct of a deputy prosecuting attorney in apprising three of the defendant's listed witnesses of the defendant's refusal to submit to a polygraph examination. In that case, we observed that any attempt by a prosecutor to influence the mind of a potential defense witness by extraneous material, inadmissible before the trier of fact, is highly improper. The same must, of course, be said with respect to the clearly deliberate attempts in this case to prejudice the mind of a potential witness by the use of such material.[1] In *Kearney,* however, the probability of prejudice to the defendant as a result of the improprieties was amply apparent. One of the witnesses in that case, a psychiatrist, affirmatively stated in his affidavit that the revelation of the defendant's failure to submit to a polygraph test created a suspicion in his mind that defendant was guilty of the crimes charged. Furthermore, the crucial issue at trial in *Kearney* was the credibility of the minor complain-

---

[1]In this connection, no distinction can be made between prosecutorial misconduct and the misconduct of investigatory officers, as both act as agents of the State in this context and due process considerations attach equally to the conduct of each. *See Napue v. Illinois,* 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959); *Barbee v. Warden,* 331 F. 2d 842 (4th Cir. 1964).

ants. The lay witnesses contacted by the prosecutor there were character witnesses whom the defendant anticipated calling for the sole purpose of bolstering the credibility of his protestations of innocence by their affirmation of his good character. The information concerning the defendant's failure to take the lie-detector test revealed to them by the prosecutor (and, in the case of at least one of the witnesses, the further information that the charges "would be dismissed" if the defendant "passed" the test) was the sort of information which by itself cast an onus upon the character of the defendant, and which must, inevitably, be taken into account by any witness in arriving at an evaluation of that character.

The connection between the improperly revealed information and the prejudice to the defendant's character defense was thus implicit in that context, despite the fact that the witnesses did not affirmatively declare that their testimony thenceforward would be unfavorable. In *Kearney*, the high probability of correctness of this inference, with respect to lay character witnesses, was bolstered by the fact that the opinion of a trained professional had demonstrably been negatively influenced by the prosecutor's misconduct.

These factors do not obtain here. In this case the witness affirmatively declared, under oath, that had he been called to testify at trial, he would have testified as to a certain *observable fact.* In our opinion, a stronger affirmation by an affiant that such fact was true to the best of his recollection could scarcely be made. Absent some more convincing indications that the conceded change in his story was influenced or instigated by the misconduct of the investigating officer, we believe that this positive affirmation negates any inference of prejudice. *See Fuller v. Cox,* 315 F. Supp. 867 (W.D. Va. 1970); *McCain v. State,* 151 So. 2d 841 (Fla. App. 1963).

Defendant makes a further assignment of error, that the rape statute, RCW 9.79.010, is unconstitutional. He

assigns no authority in support of this proposition, and the assignment does not appear well taken on its face. We need not consider such assignment on appeal. *State v. Rutherford*, 66 Wn.2d 851, 405 P.2d 719 (1965). Moreover, the entire thrust of defendant's attack on the statute is that a woman cannot be charged with the rape of a *man* under its terms.[2] This precise type of constitutional attack, which addresses itself to the statute's failure to protect both sexes by its prohibitions, was specifically rejected by this court in *State v. Sluder*, 11 Wn. App. 8, 521 P.2d 971 (1974).

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

---

[2]Defendant does not contend that a woman cannot be guilty of a violation of RCW 9.79.010, which she clearly can—as a principal within the contemplation of RCW 9.01.030 (the aiding and abetting statute). It is noteworthy that the statute has been amended to afford protection against rape to both sexes. *See* Laws of 1973, 1st Ex. Sess., ch. 154 § 122; *State v. Ewald*, ........ Wis. 2d........, 216 N.W.2d 213 (1974).