[No. 3330–2.  Division Two.  April 24, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE
W. GERRY, ET AL, *Appellants.*

*Lawrence W. Moore,* for appellants.

*Henry Dunn, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for respondent.

PEARSON, C.J.—Defendants Carol and Wayne Gerry were convicted of felonious possession of marijuana, a controlled substance. RCW 69.50.401. They challenge their convictions on two grounds. First, they contend that the police illegally invaded their right of privacy by listening to their statements from an adjoining motel room. These statements were used in the police affidavit supporting the issuance of a warrant to search defendants' motel room. Second, they argue that RCW 69.50.401 violates due process by designating possession of 40 grams of marijuana as a felony. We find no substantial merit to these arguments and affirm the convictions.

On April 7, 1977, Kelso police searched the defendants' motel room pursuant to a warrant and seized a number of items, including 94 grams of marijuana. The search warrant was based on an affidavit indicating the police had reliable information that controlled substances were delivered from San Diego to a local motel; that Wayne Gerry, who had a prior drug arrest and continuing drug involvement, was staying in room 137 at the Thunderbird Motel after registering with a San Diego address, and that Gerry was making drug deliveries every 2 weeks. The affidavit, which was admitted into evidence, indicates that after receiving this information two police officers occupied the motel room

adjoining defendants' room and overheard statements concerning the sale and use of controlled substances, *i.e.,* "real good pot," "high quality stuff," and "rolling one if you want." The officers overheard these statements without opening the adjoining door or using any listening device.

Defendants moved to suppress the evidence seized in the subsequent search of their room, on grounds that police should have obtained a search warrant before listening from the adjoining room. Defendants assert that the listening was a search. The motion was denied.

Our primary inquiry is whether the Gerrys had a reasonable expectation of privacy upon which they justifiably relied, since "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

In *Katz,* FBI agents overheard telephone conversations of a suspected gambler by attaching an electronic listening and recording device to the outside of an enclosed telephone booth. The United States Supreme Court held that this violated the defendant's reasonable expectation of privacy and thus constituted an unreasonable search and seizure under the Fourth Amendment.

In the present case, however, anyone could have rented the adjoining motel room and heard defendants' statements without a listening device, as the officers did. The situation was analogous to a visual observation under the "plain view" doctrine. Officers lawfully positioned need not look the other way or disregard the evidence their senses bring them. *Cf. State v. Martin,* 73 Wn.2d 616, 440 P.2d 429, *cert. denied,* 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 855 (1968); *United States v. Scott,* 149 F. Supp. 837, 841 (D.D.C. 1957). *See also State v. Rinkes,* 70 Wn.2d 854, 425 P.2d 658 (1967).

[S]tatements that [a defendant] exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited.

*Katz v. United States, supra* at 361 (Harlan, J., concurring). Defendants attempt to distinguish this case from those involving statements in "plain view" on grounds that the motel room adjoining theirs was not a public place. *See United States v. Case,* 435 F.2d 766 (7th Cir. 1970). *Case* held that the overhearing of defendant's conversations behind closed doors in a printing shop while agents were stationed in the hallway, which was not a public place, violated the Fourth Amendment. But in that case the proprietors were the only ones with keys to the locked hallway, and the agents were able to get in only with special cooperation of the landlord. These facts gave rise to a justifiable expectation of privacy lacking in the present case, where defendants had no control over adjoining rooms and knew that the rooms would have regular occupants. Listening by government agents from a private place does not necessarily violate Fourth Amendment rights. A speaker has even been held to lack a justifiable reliance on privacy where police listened in on his telephone conversation with the other party's consent to use of an extension phone, as in *State v. Jennen,* 58 Wn.2d 171, 361 P.2d 739 (1961),[1] or where an officer wearing a concealed transmitter entered the defendant's home and conversed with him there, as in *State v. Wright,* 74 Wn.2d 355, 444 P.2d 676 (1968).

Under facts almost identical to the present case, *United States v. Fisch,* 474 F.2d 1071 (9th Cir. 1973), held that conversations of defendants overheard by officers in an adjoining motel room without the use of any electronic equipment were not subject to suppression on grounds that there was a violation of privacy, in view of the nontrespassory origin of the information received, the absence of artificial means of probing, the gravity of the offense involved (narcotics violations) and the fact that police had reasonable cause to believe that the room in question was being used in aid of a criminal venture.

---

[1] It should be noted that such activities would be illegal under a subsequent statute, RCW 9.73.030, effective July 30, 1967.

We agree with this reasoning and hold that the listening by officers in the present case did not constitute a search. But whether or not the information obtained in the motel stakeout was obtained illegally, we are convinced that the remaining information in the police affidavit provided probable cause to support a search warrant. That information, supplied by an informant and the Federal Drug Enforcement Agency, went unchallenged by defendants and was sufficiently detailed and corroborated to permit an inference of reliability, see *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959).

Defendants next contend that their possession of 94 grams of marijuana may not constitutionally be a felony, apparently on grounds that RCW 69.50.401 violates due process by arbitrarily designating possession of 40 grams as a felony and possession of less than 40 grams as a misdemeanor. RCW 69.50.401(d).

▮▮ Defendants do not suggest that designation of a different maximum would not be arbitrary. Instead they seem to attack the legislature's authority to make any distinction based on amount. Our legislature adopted the Uniform Controlled Substances Act, which makes the 40–gram distinction, in 1971. The power of the legislature to enact all reasonable laws is unrestrained except where prohibited, either expressly or by inference, by the Constitution. *See Fain v. Chapman,* 89 Wn.2d 48, 569 P.2d 1135 (1977); *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear,* 80 Wn.2d 175, 492 P.2d 1012 (1972). Possession of marijuana is not a fundamental right guaranteed by the United States Constitution. *State v. Anonymous,* 32 Conn. Supp. 324, 355 A.2d 729 (1976). *See State v. Anderson,* 16 Wn. App. 553, 558 P.2d 307 (1976). Since controlled substances are those which the state board of pharmacy has been delegated to assign a potential for abuse under RCW 69.50.201, we cannot say the legislature was arbitrary in designating possession of a small amount as a misdemeanor while designating possession of a greater amount, with its greater potential for abuse, as a felony.

Affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied May 17, 1979.

Review denied by Supreme Court July 20, 1979.